(67 South. 888)

No. 20656.

LUTENBACHER v. MITCHELL–BORNE CONST. CO. et al.

(Feb. 8, 1915.  Rehearing Denied March· 8, 1915.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ☞ 318—MUNICIPAL CORPORATIONS ☞744—NEGLIGENCE OF INDEPENDENT CONTRACTOR.

The mere fact that a proprietor retains a general supervision over work to be constructed for him by another, for the purpose of satisfying himself that the contractor carries out the stipulations of his contract, does not make him, the proprietor, responsible for the wrongs done to third persons in the prosecution of the work, as where a sewerage and water board, as a branch of a municipality, employs an engineer to superintend the general progress of the construction of the city's sewers and water mains, which have been contracted for, and to see that the work is done according to contract.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1257, 1258; Dec. Dig. ☞318; Municipal Corporations, Cent. Dig. § 1565; Dec. Dig. ☞744.]

2. MASTER AND SERVANT ☞101, 102—SAFE PLACE TO WORK—DUTY OF MASTER.

Individuals and corporations are not bound, as employers, to insure the absolute safety of the places which ..hey provide for the use of their employés.  They are, however, bound to use all reasonable care and prudence for the safety of those in their service, by providing them with suitable and reasonably safe places to work in.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. ☞101, 102.]

3. MASTER AND SERVANT ☞85—INJURY TO SERVANT—LIABILITY OF MASTER.

"The servant does not stand on the same footing with the master.  His primary duty is obedience, and if, when in the discharge of that duty, he is damaged through the neglect of the master, it is but meet that he should be recompensed."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 136, 139, 140; Dec. Dig. ☞85.]

4. MASTER AND SERVANT ☞231—COMPETENCY OF COEMPLOYÉ—RIGHTS OF EMPLOYÉ.

"A prudent man has a right, within reasonable limits, to rely upon the ability and skill of the agent in whose charge the common master has placed him, and is not bound, at his peril, to set his own judgment above that of his superior."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 675–677; Dec. Dig. ☞ 231.]

5. MASTER AND SERVANT ☞289—INJURY TO SERVANT—QUESTION FOR JURY.

Where a servant did not assert his judgment in opposition to the judgment or stronger will of his master, the law usually allows the jury to determine whether he was negligent, or acted in reliance on the judgment of his master, or out of a constrained acquiescence in the rule of obedience which his relation as servant has imposed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. ☞289.]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Widow Blanche Lutenbacher against the Mitchell-Borne Construction Company and the Sewerage & Water Board of the City of New Orleans; the Southwestern Surety Company of Oklahoma, warrantor. From the judgments, defendants appeal. Judgment for plaintiff against the Construction Company affirmed and judgments for plaintiff and against the Sewerage & Water Board and for the board against the Southwestern Surety Company reversed.

Walter L. Gleason, Howe, Fenner, Spencer & Cocke, John P. Sullivan, Arthur Landry, Dinkelspiel, Hart & Davey, and J. C. Hollingsworth, all of New Orleans, for appellant Mitchell-Borne Const. Co. Dufour & Dufour, of New Orleans, for appellant Southwestern Surety Co. Charles Louque, of New Orleans. for appellee.

SOMMERVILLE, J.  Plaintiff, the widow of John Baptiste Lutenbacher, sues the Mitchell-Borne Construction Company and the Sewerage & Water Board of the city of New

Orléans, in solido, in the sum of $10,004, for the loss and death of her husband, May 25, 1913, while in the employ of the Mitchell-Borne Construction Company as a carpenter, while at work on a syphon under the bed of the Carondelet canal in the city of New Orleans. She alleges gross negligence and want of skill on the part of the contractors who were doing the work, which work was being prosecuted under the full control of, and with the consent and approval of, the Sewerage & Water Board.

The construction company answered, admitted that Lutenbacher was in its employ at the time and on the work indicated, and denied that he, "Lutenbacher, did not contribute in any way to the said accident, and that he had a right to believe, and did believe, that his employers had furnished a safe place to do his work which was as safe as could be expected, considering the inherent dangers of the work in which he was employed."

It further alleged that:

"Lutenbacher did assume the necessary and unavoidable risks which were involved in the character of employment in which he was engaged, and defendant further averred that it was in consequence of one of these risks that the said John B. Lutenbacher came to his unfortunate death."

They deny that the collapse of the cofferdam, which caused the death of Lutenbacher and others, was due to any defect in any of the plans or specifications in accordance with which the said cofferdam was constructed, or in the manner in which the same was constructed; and it averred that the collapse was due to causes over which it had no control.

In a supplemental answer, the defendant company admitted that the cofferdam referred to was in a dangerous condition about one-half hour before the collapse which resulted in the death of plaintiff's husband, and that the representative of said firm on the work ordered all the workmen to leave the pit in which they were working, which order was complied with; that the floodgate was opened, and water admitted for the purpose of equalizing the pressure of the water from the outside; that the dam needed additional bracing, and that workmen, after full warning as to the dangerous situation, went down again into the excavated place and proceeded with the work of putting in said additional bracing; that subsequently, on the same day, other workmen, including Lutenbacher, after additional bracing had been done, were advised by the foreman of the defendant "that they were not required to go back into the dam, and that he wanted no one of them to do so who was in any way afraid to do so, it being thoroughly understood that there was, in view of the then condition of the structure, a risk involved in so doing; thereupon, after consultation among themselves, four or five of the said workmen out of about twenty-five who had left the dam under direction of John O. Chisolm, as above set forth, went back therein; that a very short time thereafter, without any warning, the collapse of the said dam suddenly occurred," and that Lutenbacher assumed the risk of the accident which resulted in his death.

The Sewerage & Water Board answered, admitting that the Mitchell-Borne Construction Company, under contract with said board, was doing the work, and alleged that said company was an independent contractor, that it, the board, is a quasi municipal corporation, and exercises the rights and functions of a municipality quo ad sewerage, water, and drainage, and that any rights which plaintiff may have would be against the city of New Orleans, and not the board. It denies the liability for damages resulting from the laches or faults of the defendant company.

There was judgment in favor of plaintiff, and defendants have appealed.

[1] The allegation in plaintiff's petition that the sewerage and water board had made itself responsible with the contractors for defective work which had been done by the contractors, and which resulted in the death of her husband, and the allegation in the answer of the defendant company, to the effect that it was "not an independent contractor, under the general and special specifications of" the contract with the sewerage and water board, are not borne out by the evidence in the record.

The Sewerage & Water Board was organized in the year 1899 for the purpose of providing a sewerage and water system for the city of New Orleans; it was made the duty of the board to adopt a system covering the habitable portions of the city, and to adopt plans and specifications for the establishment of such system. It was directed to let the contracts for the work decided to be done to the lowest bidders, upon giving satisfactory bonds.

The defendant company entered into a contract with the board for the construction of a canal in Broad street from the lower side of St. Bernard avenue to a line near Carondelet walk; and of a syphon under the Carondelet Navigation canal, etc. The specifications which formed part of the contract between the defendant company and the board contained certain specifications which plaintiff and the defendant company both argue make the board responsible to plaintiff. The plaintiff claims that the company and the board are jointly responsible to her, and that the defendant company was not an independent contractor.

The contract between the board and the company is in writing, wherein the company agreed to do the work mentioned therein and to furnish all work, material, and construction at its own cost and expense, and to build in a good, strong, and substantial manner the canals of every kind complete, of the dimensions specified in the contract, and in accordance with the plans of the Sewerage & Water Board for the sum $124,262, to be paid to it by the Sewerage & Water Board. It gave a bond to the board for the faithful performance of the contract, as was specified should be done in the act of the Legislature.

The specifications for the work contain provisions to the effect that the general superintendent of the board had authority to require the contractor to discontinue the use of excavating machinery which, in his judgment, was not adapted to the purpose for which it was being used, and that the work should be executed under the supervision of the general superintendent of the board, and as he might direct through assistants employed by the board. It was provided, further, that the general superintendent and his assistants should measure and calculate the quantities and amounts of the several kinds of work performed and the compensation to be paid therefor; the contractor was to repair or be responsible for all damages to public or private property resulting from the execution of the work, and to indemnify and hold harmless the board against all damages resulting from personal injuries; the contractor, at the request of the engineer, was to discharge any men, who, in his opinion, were disorderly, incompetent, or unfaithful; the work was to be executed at such location and in the order of precedence as indicated by the engineers; the contractor was to be guided in the work by the lines staked, and the instructions given to him by the engineer; the contractor was obliged to follow at all times, without delay, all orders and instructions of the engineer in the prosecution and completion of the work; the contractor was obliged to remedy any neglected portions of the work, and all improperly constructed work on notice in writing from the engineer; and, if he failed to so act, the engineer might perform such

work at the contractor's expense. Article 136 of the specifications reads:

"The contractor shall be responsible for the work until completed and accepted by the contractee."

Added to these stipulations or general specifications was the following:

"It is well understood that the right of supervision by the general superintendent and other employés of the board will not make the contractor an agent of the board, and that the liability of the contractor for all damages to public or private property arising from the contractor's execution of the work shall not be lessened because of such right of supervision. Such right of supervision is retained in order to insure to the board the completion of the work according to the specifications, and to insure the public in general from all unnecessary inconveniences, during the construction of the work."

The section last quoted is binding upon the defendant company. It was agreed between it and the board that it should not become the agent or servant of the board under the contract entered into, and that the board should not become the master.

With reference to the claim of the plaintiff against the Sewerage & Water Board, the law is, as laid down by Thompson in his commentaries on the Law of Negligence, § 660, p. 598:

"The mere fact that the proprietor retains a general supervision over the work, for the purpose of satisfying himself that the contractor carries out the stipulations of his contract, does not make him responsible for wrongs done to third persons in the prosecution of the work, as where a railway company employs an engineer to superintend the general progress of the construction of its road, and to see that the work is done according to contract."

The citation of authorities in support of the section quoted is quite full, and others might be added.

Labatt on Master and Servant states the rule thus:

"The accepted doctrine is that, in cases where the essential object of an agreement is the performance of work, the relation of master and servant will not be predicated, as between the party for whose benefit the work is to be done and the party who is to do the work, unless the

former has retained the right to exercise control in respect to the manner in which the work is to be executed. This attribute of the relation supplies the single and universally applicable test by which the servants are distinguished from independent contractors." Section 64.

The specifications have been examined carefully, and there was not reserved to the board the right to exercise control in respect to the manner in which the work was to have been executed. It was to have been done under the supervision of the engineer of the board, or his employés. They were to prescribe the order in which the materials were to have been placed; and they were to have given the lines and levels to be used. The contractor was to have kept upon the work at all times responsible employés, and he had to remove from the work, at the request of the engineer in charge, any person who was not acceptable, and all material, supervision, and labor furnished by the contractor was subject to the approval of the said engineer in charge, and nothing more. The contractor was solely responsible for the work until it was completed and accepted by the board.

The master's liability rests upon his right to select the servants and to control their work; but, when this selection and control rests in a contractor, he, the master, is freed from such liability. Where the contractor undertakes to perform certain work without interference from the contractee as to the mode or manner of doing the work, and the contractor employs the men who are to do the work, the latter is an independent contractor, and not the servant of the contractee. Callan v. Bull, 113 Cal. 593, 45 Pac. 1017.

In the case of Uppington v. New York, 165 N. Y. 225, 59 N. E. 92, 53 L. R. A. 551, a contract was under consideration which contained the stipulation, as does the one now being considered, that:

"All damages resulting to buildings, etc., through the negligence of the contractors, were to be paid by them, and they were required to give a bond to indemnify the city against all suits brought on account of injuries sustained through the construction of the work, or by or on account of any act or omission of [on the part of] the contractors or their agents."

And the city was authorized to retain enough money going to the contractor to make good all losses to third persons. Other stipulations, similar in scope to those under consideration in this case, were contained in that contract; and it was held that, where the city had the power to let work, and had entered into a contract with competent contractors, doing an independent business, who agreed to furnish the necessary materials and labor, and make the improvement, according to the specifications, for a lump sum, or its equivalent, they were not the servants or agents of the city, but were independent contractors. The court there held:

"Independence in control in employing workmen and in selecting the means of doing the work is the test usually applied by courts to determine whether the contractor is independent or not."

The Mitchell-Borne Construction Company, competent contractors, engaged in an independent business, undertook to build the canal and syphon in question, with its own materials and with its own laborers; by specific agreement, it was to furnish both. It represented the will of the board as to the result of the work, but not as to the means of doing it. The men, the machinery, and the details were all under the control of the company. The board could not employ workmen for the company or direct the work or men employed by it. The board could not select the tools and appliances to be used, or require them to be used in any particular way at any particular time. The will of the contractor, and not of the board, controlled in these respects. The stipulations to secure faithful compliance with the specifications on the part of the contractor do not make it a servant of the board, as was held in Kelly v. New York, 11 N. Y. 432. To the same effect is the decision in Casement v. Brown, 148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582, and Norwalk v. Norwalk, 63 Conn. 495, 28 Atl. 32.

Complaint is made that the board permitted a change of the specifications with reference to the building of the cofferdam. The dam did not form part of the permanent work. It was for temporary use while the syphon was being placed. The specifications called for a dam of the mud box type. The board permitted the construction company to substitute grooved metal sheet piling instead. It was explained by the engineer of the board that the specifications, with reference to the mud box type of cofferdam, were not intended as a plan of construction to be followed by the contractor, as the board was not concerned with the manner of construction; but it was intended only to indicate to the contractor the amount of sheet piling which the board deemed was necessary, and for which alone the board was willing to pay. The cofferdam was to be constructed for temporary service, to keep the waters of the canal back while the syphon in the Broad street canal was being built of concrete, under the Carondelet canal. The board did not undertake, in the specifications, to direct the manner in which the cofferdam should be built. And, because it was built in a faulty manner, and caused the death of plaintiff's husband, the board cannot be charged with the fault of the construction company.

The board is not liable to plaintiff for the damages suffered by her through the loss of her husband.

Reference has been made to the decision of this court in the case of Quayle v. Sewerage & Water Board, 131 La. 26, 58 South. 1021, where it was held that the Sewerage & Water Board was responsible to plaintiff for

damages in that case. It has no application to this case. There it was testified that the contractors, who were engaged in repairing sidewalks which had been torn up by the Sewerage & Water Board, were doing what was called "task" work; and the superintendent of the board testified that said contractors were subject to discharge at a moment's notice by the board, and that the inspector of the board remained on the work and directed how it should be done; that if the work was done wrong, the inspector would command the contractor to do the work in a better way. The contracts in the two cases are altogether dissimilar in their effects.

The cofferdam which was under construction by the defendant company, and which was a temporary structure, designed to keep the waters of the canal back while the work on the syphon was being done, had proceeded so far as the placing in position of metal sheet piling on either side of an excavation which had just been completed. The sides had been braced so as to make them secure, and to permit carpenter work being done in the excavation between the two tiers of sheet piling. On the day of the accident, one row of sheet piling bulged in such a manner as to indicate very clearly that the work was defective, and that there was danger of a collapse. All of the men in the pit, including the husband of plaintiff, were ordered out by the representative of the defendant company. The water was turned into the pit, so as to equalize the pressure on both sides of the bulged piling. Additional braces were then put in, and the sides of the pit were strengthened. About one-half hour after this work had been accomplished, plaintiff's husband, together with other laborers, was directed, by the representative of the defendant company in charge of the work at that time, to go down into the pit and to resume work. The giving of this order is contradicted by the representative of the company, who testified that he warned the workmen under him of the danger of the situation, and he says that he left it optional with them to work or to refrain from working. But the preponderance of evidence shows that the order was given by said representative to proceed with the work. Thereupon several men descended into the pit, and were at work when the grooved metal sheet pilings on one side of the excavation gave way, and five of the workmen were drowned; among them was plaintiff's husband.

The fact that the metal sheet piling had bulged to an alarming and dangerous extent was fully known to the representative of the defendant company in charge of the work at the time. He knew, or he should have known, that the place was dangerous at that time. He knew, or he should have known, that a total collapse of one side of the cofferdam was threatened after one side of the dam had bulged. It is true that he strengthened the timber braces which held the two sides of the dam in position, and it is also true that this additional bracing was insufficient to secure the sides of the dam, because, within one half hour after the work was done, one side of the dam collapsed, and five workmen were drowned, who had gone into the pit to work. Defendant has not undertaken to show that the accident was due to a vis major; and, in the nature of things, it must be assumed that the accident happened because of insufficient and insecure bracing of the sides of the dam. Defendant offered the testimony of an expert, to the effect that the accident might have happened as a result of some latent defect in the metal sheet piling, or because of a sand boil at the base of the piling. If either of these conditions existed, it would have been an easy matter for defendant to have introduced evidence concerning them. The fact of the absence of such evidence is conclusive that neither of these conditions existed. The fault

was evidently in the bracing, either because an insufficient amount was used, or it was improperly placed.

The fact that the servant, at the time he was killed, was complying with a direct, specific, personal order of his master's representative has a material bearing upon the question whether or not the master may be held responsible. The servant did not voluntarily encounter the danger which resulted in his death. He obeyed the order of the representative of the defendant company, which order was negligently given, and which resulted in the death of some of those workmen who obeyed it. The direction given by the representative of the defendant company to the men under him to proceed with the work in course of construction may not have been of a formally imperative character, but those directions nevertheless were the inducing cause of the husband of plaintiff, together with other workmen, to go down into the pit and resume work; it was the inducing cause of the accident which resulted in the injury complained of. The deceased would not have, or could not have, resumed the work except under the special directions of the defendant's representative. He was in charge of the construction of the dam, and, he only, employed the workmen and directed their conduct.

[2] It was the duty of the defendant company to have given a safe place to the men in its employ in which to work. The place in this instance was not safe; it was dangerous, and defendant's representative knew it to be so. The employer is bound to use all reasonable care and prudence for the safety of those in his service by providing a place reasonably safe and suitable for the use of the latter. And the greater the risk which attends the work to be done and the machinery to be used the more imperative is the obligation resting upon him. Reasonable care, then, becomes a demand of higher supremacy,

and yet in all cases it is a question of the reasonableness of the care—reasonableness depending upon the danger attending the place or the machinery. Patton v. Texas & P. R. Co., 179 U. S. 658, 664, 21 Sup. Ct. 275, 45 L. Ed. 361.

The assumption of risk, pleaded by the defendant company, is eliminated in view of the fact that the servant lost his life in obeying a direct command of the representative of the defendant. Under such conditions, the representative took upon himself the risk which might otherwise have been assumed by the servant. Hunley v. Patterson, 116 La. 736, 41 South. 54; 20 A. & E. Ency. 148.

[3, 4] In the case of Patterson v. Pittsburg & C. R. Co., 76 Pa. 389, 18 Am. Rep. 412, it is laid down as a fundamental principle that:

"The servant does not stand on the same footing with the master. His primary duty is obedience, and if, when in the discharge of that duty, he is damaged, through the neglect of the master, it is but meet that he should be recompensed."

This essential inequality in the positions of the parties is deemed to warrant the deduction that "a prudent man has a right, within reasonable limits, to rely upon the ability and skill of the agent in whose charge the common master has placed him, and is not bound, at his peril, to set his own judgment above that of his superior." Labatt, Master & Servant (7th Ed.) p. 3935; Faren v. Sellers, 39 La. Ann. 1011, 1020, 3 South. 363, 4 Am. St. Rep. 256; Camp v. Church Wardens, 7 La. Ann. 321.

[5] In this case the jury found that the husband of plaintiff was not negligent, and that he acted in reliance upon the judgment of his master, or out of a constrained acquiescence in the rule of obedience which his relation as servant imposed.

The evidence in the case shows that the bracing in the cofferdam had been finished, and the work of excavation had been proceeded with, when one of the walls of the

dam yielded to the pressure of the water in the canal, and bulged to such an extent that it became necessary for the defendant company to reinforce the bracing. It was clear to the representative of the defendant in charge of the work at that time that the bracing was insufficient. It was equally clear to the minds of the jury, and to the court, that the second bulging and collapse of the side of the cofferdam was due to insufficient bracing. This condition was testified to by competent engineers, and there is no doubt on the point. It is also true that the servant lost his life while obeying the orders of his master. It, therefore, becomes unnecessary to discuss the doctrine of res ipsa loquitur which was urged in argument, oral and printed, on behalf of the defendant company, and of the application of that doctrine to a cause between a master and his servant. Labatt in his work on Master & Servant cites authorities on both sides of the question, with a preponderance in favor of its being applied in such cases.

The husband of plaintiff, who met his death in the manner herein indicated, was forty-nine years of age, and in the enjoyment of good health. He was a carpenter, earning from $2.50 to $3.50 per day. By his death plaintiff has been deprived of the support and the companionship of her husband. The verdict of the jury in her favor for $10,004 will not be disturbed.

It is therefore ordered, adjudged, and decreed that the judgment in favor of plaintiff and against defendant the Mitchell-Borne Construction Company is affirmed.

It is further ordered, adjudged, and decreed that the judgments in favor of plaintiff and against the Sewerage & Water Board of New Orleans, and in favor of said board against the Southwestern Surety Company of Oklahoma, are annulled, avoided, and reversed; and, as thus amended, the judgment is affirmed. Costs of appeal to be paid by the Mitchell-Borne Construction Company.