## KELLY v. LONE STAR GAS CO.*

No. 3878.

Court of Civil Appeals of Texas. Texarkana.
July 29, 1930.

Rehearing Denied Oct. 23, 1930.

Thompson & McWhirter, of Greenville, for appellant.

Harry P. Lawther, of Dallas, and B. M. McMahan, of Greenville, for appellee.

LEVY, J.

The appellant brought the suit against the Lone Star Gas Company for damages for personal injuries received by him. The Lone Star Gas Company pleaded that the injury to appellant was caused, not by it or any of its employees, but by the Community Natural Gas Company an independent contractor and for whose acts it was not responsible. Under a peremptory instruction the jury returned a verdict and a judgment was accordingly entered in favor of the defendant company. The giving of the peremptory instruction is assigned as error.

In 1927 a pipe line was being laid from Commerce to Sulphur Springs. During the progress of constructing the pipe line and while certain sections of pipe that had been welded together were undergoing an air pressure test for air leaks, "the bull plug and dresser sleeve blew out" and struck and injured the appellee. The Lone Star Gas Company owned the pipe line and the right of way. The Lone Star Gas Company had entered into a contract with the Community Natural Gas Company to lay the pipe line. It was not shown whether the contract was oral or written. So far as proven, the terms of the contract provided that the Community Natural Gas Company was to lay the gas pipes for a gross sum. The Lone Star Gas Company was to furnish the pipe and the paint. The Community Natural Gas Company was to provide the labor and "the ditch-digging machine, tractors, trucks, picks, shovels, wrenches and all the tools necessary for the construction work." Taking the testimony alone of the assistant superintendent of the Community Natural Gas Company, the conclusion would follow that the Community Natural Gas Company was an independent contractor. It was to perform the work exclusively under plans and specifications, hire, discharge, and pay all the labor, and provide all the means to build the line except the pipe and the paint. But taking the testimony of the witnesses Strickland, Moore, and Pierce, the evidential elements pertaining to the independence of the contract was of the probative significance to raise a question for the jury. According to their evidence it could be concluded that the Lone Star Gas Company had an inspector on the ground and in its employ who did service during the progress of constructing the line such as the jury might determine was in furtherance of the control and direction of the details of the work. For instance, Mr. Strickland testified: "I was working for the Community Natural Gas Company. Mr. Sleepy Fullbright was the inspector out there. The work out there

had to be carried on according to the inspector's wishes. I have seen him take a rule and measure the ditch that the pipe was laid in—the depth and the width of it too. He was around the job all the time, passing up and down the work all the time as it was going on. One time there was a big rock across the ditch and the ditcher would not go over it, and he sent me back to dig the rock out. Sleepy was there, and he directed me how to do it. A number of times when we were putting the pipe in the ditch Sleepy would be there. The work was directed by Sleepy, and the bunch (crew) did it like he said to do it. Sleepy had charge of the work all the way along; and whether Mr. Collie was there or not he had charge of the work, regardless of who was there. When they crossed South Sulphur Creek Sleepy was present. He directed the work of stretching a rope across the stream, and the men who were holding it, while they bent the pipe. He was the man in active charge of the work. Mr. Baxter Moore was my foreman and I was working under his direction, but Sleepy was having the pipe fixed and we had to satisfy him, whatever it was to be done. In crossing Horse Creek Sleepy was present and controlled the work. He told how he wanted it done and the way he wanted it fixed, and they fixed it. In crossing Wolf Creek it was the same way. In going under railroads Sleepy was sometimes present and sometimes he was not; he was generally always there, but not every time. Sleepy looked after the crossing of public roads, and he was present when we crossed highways," etc. Mr. Baxter Moore and M. J. Price, who both worked on the line being constructed, testified substantially as did Mr. Strickland.

■ The mere fact that the Lone Star Gas Company had, as proven, an inspector, who supervised the work for the purpose of seeing that it was done in conformity to the contract, would not conclusively negative the independence of the contract. The right of the employer to exercise a limited control over the work without thereby destroying the independent character of the contract has been recognized by the courts. St. Louis & S. F. Ry. Co. v. Madden, 77 Kan. 80, 93 P. 586, 17 L. R. A. (N. S.) 788; Lutenbacher v. Constr. Co., 136 La. 805, 67 So. 888, 19 A. L. R. 206; Uppington v. New York, 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550; Welsh v. Coal Co. (Pa.) 5 A. 48; Larsen v. Ry. Co., 110 Mo. 234, 19 S. W. 416, 16 L. R. A. 330, 33 Am. St.

Rep. 439; Harrison v. Kiser, 79 Ga. 588, 4 S. E. 320; Thurston v. Terminal Co. (Mo. App.) 168 S. W. 236; Arkansas Natural Gas Co. v. Miller, 105 Ark. 477, 152 S. W. 147. See Kaler v. Puget Sound Bridge & Dredging Co., 72 Wash. 497, 130 P. 894, 20 A. L. R. page 676. On the other hand, however, it is the established rule, as is conceded, that, where there is proof that the person contracted with is subject to the control of the employer acting through his employee with reference to the details of the work, the independence of the contract for the performance of the work is negatived. It can be correctly said, we think, that, where the contract is in writing, the question of the relation created by it between the parties is ordinarily one of law for the court; but if the contract is oral and more than one inference can be drawn from the evidence as to the methods to be pursued and the necessary interest and concern of all of the parties in the manner of doing the work, the question should be submitted to the jury. The proof in this case does not show whether the contract was oral or written. Therefore, considering the evidence of the three witnesses mentioned, it cannot be fairly held that Mr. Fullbright was supervising the work for the mere purpose of seeing that it was done in conformity to the contract without interfering as to the particular method in which it was done or the means by which a given result was to be accomplished. Speaking strictly to the present evidence, there was error in giving the peremptory instruction.

The judgment is reversed, and the cause is remanded.

## On Motion to Have Additional Findings of Fact.

■■ It is believed that the motion should be denied. The giving of a peremptory instruction is the assignment of error on appeal. A peremptory instruction having been given, the only question is that of whether there was any evidence, as a matter of law, raising an issue for the jury. The Court of Civil Appeals merely looks to the statement of facts and does not announce any distinct findings of fact. As stated in Manchester Fire Ins. Co. v. Simmons, 12 Tex. Civ. App. 607, 35 S. W. 722, 724: "The supreme court has as much authority to look to that statement for the detailed facts as it has to consider them when restated by us." Such evidence as is set forth in the opinion was only for illustration that there was "some evidence" raising an issuable fact.