Strafford,   }
Feb. 3, 1931. }

PARNELL J. CLAIRMONT *v.* GEORGE CILLEY & *a.*

*Conrad E. Snow* and *Thornton L. Lorimer* (*Mr. Snow* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendants.

ALLEN, J.   The plaintiff was injured in trigging a truck driven by the defendant Clifton, one of his employers, and stalled on the way up a hill.   He was driving another truck behind Clifton's and as was the custom had stopped at the foot of the hill to wait until Clifton's reached the top.   When Clifton's truck stalled he applied the brakes and called out to the plaintiff: "Trig the truck; I cannot hold it." The plaintiff stepped out of his truck, ran up the hill, picked up a stone, and on reaching the stalled truck undertook to place the stone against its rear right wheel.   Each side of the truck overhung the wheels about a foot and the plaintiff had to stoop and stretch his arm under the overhang to place the stone in position.   While thus engaged the truck suddenly started to move backwards and his hand was caught beneath the stone as the truck struck against it.

The defendants concede the sufficiency of the evidence to show Clifton's negligence in assigning the plaintiff to a task of unnecessary danger, but say the risk was assumed.

In telling the plaintiff he could not hold the truck Clifton informed him that it was likely to start in motion at any instant.   Whatever caused the motor to stall and whatever the reason the truck could not be held, the danger of backward motion was brought to his attention and he acted with knowledge of it.   If the stationary position of the truck until he was hurt gave him reason to think it would continue to hold, he was not entitled to further warning because Clifton had no more reason to anticipate the starting than he did.   The truck held for a time and Clifton is not shown to have had reason to expect it would not remain held any more than the plaintiff.   It is true the plaintiff thought Clifton wished to have the truck trigged so it could be held on the hill while Clifton might crank and start the motor.   But it remains that he was told it could be held only if he

trigged it, and notice of the danger of its starting was not affected because of Clifton's probable action after it might be securely held. Clifton needed his help because the truck could not be held without it. That is what was told him and he was given fair warning of what was likely to, and what did, happen.

Under the definition of assumption of risk as usually expressed its rule would seem clearly applicable. The plaintiff was ignorant of no fact material to his safety and of which he was entitled to be informed. His knowledge of the danger was equal to Clifton's.

But the plaintiff acted in an emergency under direct orders from his employer and the emergency might be found caused by his employer's negligence. In the present state of the law these conditions may show that the danger was not voluntarily encountered. If it was formerly the rule in master and servant cases that when the servant acts in the face of known danger his intentional conduct not physically compelled was always voluntary, the law does not now so regard it in cases where there is no reasonable opportunity to decide between the action taken and other action or non-action. Such change as has taken place in the law is a change of the meaning of the rule and not of its definition. Voluntary assumption of risk of obvious dangers remains a defence. But freedom of choice and time to make it in taking action are required to give the action a voluntary character.

So far as the law has thus changed, the change may be ascribed to a number of reasons. The tendency of public thought to give more emphasis to social protection in its adjustment with the welfare of industrial enterprise is reflected, aside from legislation, in the common law as well. The growth and extension in the law of the duty of protection has tended to narrow the area of irresponsibility for injury incurred in the course of action intentionally taken. And considerations of natural and normal conduct show that force of circumstances may give such moral compulsion to action as to make it voluntary only under a strict and severe test. Allowance for other than physical coercion is a reasonable demand of justice.

The sense of duty to obey and the stress of emergency may so outweigh and displace other thought as to make its requirement arbitrary in taking action. If there is no time to weigh danger against safety in a normal and natural way, the law is not so rigid as not to recognize it. The fact that the servant is acting under direct orders of the master is not enough to excuse him from making a choice and assuming the risk if he continues his work. *O'Hare* v. *Company*, 71 N. H.

104.   But if there is also an emergency which in a practical way shuts out the opportunity of choice, the risk is not voluntarily incurred, at least if the emergency is due to the master's fault.

It is the law here that one may not recover when as a volunteer he incurs danger to save the lives or property of others carelessly by them placed in peril.   *Clark* v. *Railroad*, 78 N. H. 428, 430; *Smith* v. *Company*, 83 N. H. 439, 446.   It is also the law as to one acting, not as a volunteer, but in the course of public duty.   *Ib.*   But a practical and substantial difference exists between such cases and cases where the person helped owes the duty of protection to the one helping him. In the cases of the volunteer and the public servant no duty of protection is owed them, because no relation exists out of which a duty may be imposed.   They intervene without inducement from the party they protect.   The situation is not the same in the case of the private servant acting in the line of duty.   Owing the service, he is not a volunteer, and his assumption of risk is imposed, not because of non-relationship with his employer, but as an incident of the relationship. Cases of intervention therefore do not help to solve the problem of defining the scope of  assumption of  risk in master and servant cases where the servant acts within his employment.

In the widest latitude of the rule the servant assumes only known and appreciated risks.   Even when by the terms of the service he is to act in emergencies as they may arise, if it goes too far to say that he does not thereby waive or lose his right to know about the danger of a particular emergency when it does arise, at least this is so when the emergency is brought about by the master's negligence and the servant is acting under his direct orders.   Bound to use care for the servant's protection, the master is bound to be careful to avoid emergencies likely to expose the servant to danger.   He may not carelessly create a situation of emergency although the terms of service may call for the servant to act in it.   Otherwise the rule of public policy against contracts of release from liability for future negligence would be invaded.   The master's own breach of duty may perhaps not entitle the servant to disobey orders but it does give him the right to leave the service.   This right is more than theoretical and the law seeks to give it practical value.   Fair and reasonable opportunity for its exercise must appear, or the risk will not be held to be assumed. What constitutes such opportunity is of course a question of fact. If time enough is given the servant to weigh his own safety in the balance with his interest of employment, choice of action is afforded him.   Otherwise he is not assuming the risk of obvious dangers in

such cases, subject to the possible condition that he is acting in compliance with immediate orders.

This limitation on the extent of the doctrine has been announced in earlier cases. It is said in *Olney* v. *Railroad*, 71 N. H. 427, 431: "When, after discovery of the defect, the servant has no opportunity to leave the service before the injury is received, there is no ground for the legal implication of such contract [of assuming the risk]." The same principle is stated in *Castonia* v. *Railroad*, 78 N. H. 348, 351, and in *Crugley* v. *Railway*, 79 N. H. 276, 278. In *Collins* v. *Company*, 68 N. H. 196, 197, the suggestion is made: "There was no emergency requiring him [the plaintiff] to expose himself to the danger." And in *Young* v. *Railroad*, 69 N. H. 356, 358, attention is called to the fact that the plaintiff there was "under no compulsion nor constrained by any sudden exigency."

In *English* v. *Amidon*, 72 N. H. 301, the limitation received definite declaration. In this case the plaintiff left his workroom at night by an unlighted stairway which had defects he knew about. He had to leave in this way or remain in the room. In discussing the defence of assumption of risk the court expressed a limitation of it in this language: "One cannot be said, as a matter of law, to assume a risk voluntarily, though he knows the danger and appreciates the risk, if at the time he was acting 'under such an exigency, or such an urgent call of duty, or such constraint of any kind, as in reference to the danger deprives his act of its voluntary character' (*Mahoney* v. *Dore*, *supra*, [155 Mass. 513] ) . . . " And it was held to be for the jury to say if "the plaintiff, knowing the defendants' neglect of duty, fully appreciated the danger therefrom and voluntarily encountered it."

It thus appears that in the present standing of the rule a risk is not voluntarily incurred in master and servant cases in a legal sense unless the action taken follows time for thought about it, with the possible qualifications that the master's order to take the action immediately precedes it and the master's fault brings about the emergency. The result is that the rule may not have much practical value as a defence in such emergency cases. But it is promotive of justice. And this is the prevailing state of the law. Labatt, M. & S. (2d. *ed.*), c. 56. While the reasoning of some of the cases is doubtful, they reach the same conclusion. *Smith* v. *Baker*, [1891] A. C. 325; *Mahoney* v. *Dore*, 155 Mass. 513; *Cleveland &c. Ry. Co.* v. *Bossert*, 44 Ind. App. 245; *Illinois Central R. R.* v. *Atwell*, 198 Ill. 200; *Perrier* v. *Dunn &c. Mills*, 29 R. I. 396; *Long's, Adm'r* v. *Railroad*, 113 Ky. 806; *Reese* v. *Clark*, 198 Pa. St. 312; *Strong* v. *Railway*, 94 Ia. 380; *Van Duzen &c.*

*Co.* v. *Schelies,* 61 Oh. St. 298; *St. Louis &c. R. R. Co.* v. *Morris,* 76 Kan. 836; *Chicago &c. Ry. Co.*v.*McCarty,*49 Neb. 475; *Sawyer* v. *Company,* 90 Me. 354; *Norfolk & Western R. R. Co.* v. *Ward,* 90 Va. 687; *Lutenbacher* v. *Company,* 136 La. 805; *Kansas City &c. R. R. Co.* v. *Thornhill,* 141 Ala. 215; *Koreis* v. *Railroad,* 108 Minn. 449.

In *Merrill* v. *Company,* 79 N. H. 211, the plaintiff was injured in attempting to trig a moving truck. He acted under orders from a fellow-servant not given by direction of the master. A situation of emergency in which immediate action had to be taken to save life or property was not presented. The case was not considered in such an aspect and it is not to be regarded as authority inconsistent with the position here taken.

In respect to the voluntary encounter of the danger the case of *English* v. *Amidon, supra,* seems quite parallel with that on hand. If it is to be regarded as one of constraint rather than of emergency, yet the opportunity of choice in incurring or avoiding the danger was as great there as here. There being no fair chance to exercise and adopt a choice, virtually there could be no choice, and hence no voluntary action in a legal sense. As between constraint in the workroom and descending the stairs it was not necessarily a voluntary assumption of the danger to leave in the only available way. So here, as between compliance with orders and leaving the service, it was not a voluntary assumption of the danger to obey the order issued if no proper amount of time was given to decide between continuance of the service and throwing it up. The demand for immediate action in the emergency and under the order may be found to be so great as to have prevented a choice of action that would be voluntary. While the plaintiff acted intentionally and with knowledge of the danger, sufficient moral compulsion might be found to take away a voluntary aspect of his conduct if he did not have fair freedom and time for making a choice of action.

The peremptory character of the order is hardly to be questioned, and Clifton's negligence as the cause of the emergency might be found. The motor stalled at a steep pitch on the hill because of the giving out of an inadequate repair he had made to a cylinder, and the brakes did not hold as they should because grease from the chain was thrown into them, an occurrence of which he knew the tendency. The truck and its load weighed about ten tons. Foresight of what happened in view of his knowledge of these factors and avoidance of what happened as an unnecessary danger to the plaintiff if he was called upon to meet it, might be a demand of care.

Evidence appears tending to show the risk was not assumed.

If the plaintiff undertook to trig the truck when he knew it was in motion, the result is not changed, and the court properly refused to instruct the jury that there was no liability in that view of the case.

The defendants excepted to the denial of an instruction that Clifton's negligent management of the truck after it stalled could not be found.

The plaintiff says that the sudden start was due to Clifton's careless release of the brakes after holding the truck stationary when it first stalled. Clifton testified that when the motor stalled he applied both the emergency and foot brakes and kept the motor in low gear, but in spite of all that the truck at once commenced to back down the hill. He denied releasing the brakes in any way. There was no other direct evidence about his operation of the truck after it stalled. It is argued that the testimony may be discredited and that, because, as may be found, the truck was held without moving until its sudden start testified to by the plaintiff, the start was findably due to a careless release of the brakes.

In view of the weight of the truck and its load and of the steep pitch of the hill where it stalled, the truck was bound to move back down the hill if the brakes and compression of the motor while in gear did not hold it. There is no common knowledge how long the compression of a motor in gear but not running will hold when the motor is in good condition. If the testimony that the brakes and motor were not in good order were rejected, a conclusion to the contrary would not be warranted. It would be a situation of no evidence one way or the other. And if the brakes were released, it is not shown by falsehood in saying they were not. Falsity of testimony is no proof of what is true and disbelief does not supply the need of proof. *Richardson* v. *Company*, 77 N. H. 187, 189. Otherwise any fact might be proved by discrediting testimony to the contrary. While the falsehood of testimony may add to the weight to be given evidence to the contrary, the testimony by itself does not go far enough to establish the fact it denies.

On the record and rejecting Clifton's testimony by acceptance of the plaintiff's to the effect that the truck was held where it was stalled until its sudden start as he was attempting to trig it, one may not fairly say what gave way to release the hold. If without the compression the brakes could not hold, it is as reasonable to assume that the compression failed as that the brakes, one or both, were released. And if the brakes or one of them were released, it may as well have

been an accidental release or a release in the course of a prudent effort to give them a better and surer hold as a negligent release. It follows that there is no sufficient evidence of a negligent operation of the truck after it stalled, and the exception on this point is sustained.

One of the defendants paid some of the plaintiff's expenses after he was hurt, and they excepted to the admission of the evidence showing it. It is apparently conceded to have been a partnership action. The court instructed the jury without exception that the partnership made the payments.

The court left it to the jury to say if the payments were made because of a liability the defendants thought existed or merely as aid to one needing help, in which event they were not to be used as evidence of an admission. It would seem conjectural to say what the payments did indicate as between these alternatives. The present day employer who relieves his employees injured in service probably does it as much out of goodwill and interest in them regardless of liability as in recognition of liability, in the absence of other evidence about it. The record shows no evidence casting light on the character of the payments in this respect.

The evidence was properly admitted if there was or probably would be evidence tending to show the payments were made in acknowledgment of liability. Apparently the court ruled the evidence admissible either regardless of the need of other evidence or upon a finding that there was or probably would be such evidence. None having been introduced and no probability of any appearing, the ruling was error. And none was later introduced to cure the error. The exception was correlated with the further exception to the charge which permitted a conjectural finding in the authority given to infer an admission.

*New trial.*

SNOW, J., did not sit: the others concurred.