In re HOLMES et al.

(Supreme Court, Appellate Division, Third Department. January 11, 1899.)

1. TRUSTS—FOLLOWING TRUST FUNDS—IDENTITY.
Where trust moneys are shown to have been in the hands of a trustee at a certain date, and he paid interest on them until his death, the fact that he mingled part of the moneys with his own, and deposited them in a bank, is sufficient to entitle the cestui que trust to a preference over other creditors of the trustee, though it is impossible to point out the precise thing in which the trust fund has been invested, or the precise time when the conversion took place.

2. SAME—PRESUMPTIONS.
Where one is shown to have had the possession of trust funds as trustee, and he mingles them with his own fund, it will be presumed that whatever money or property was used by the trustee after such commingling was his own, and was not the trust fund, and that such fund remained in his hands, forming a part of the sum found in the possession of his administrator.

Appeal from judgment on report of referee.

In the matter of the petition of Susan M. Holmes and others for the appointment of a trustee of a trust created by the will of Fanny Hearsey, deceased. From the determination of a referee, and an order confirming his report, the administrators of the deceased trustee appeal. Affirmed.

There is no controversy in regard to the facts of this case. One Fanny Hearsey, of Madison county, N. Y., who died previous to July 7, 1873, by her will bequeathed one-third of the remainder of her estate to her executor and executrix, in trust to receive the income thereof, and apply the same to the use of the petitioner Susan M. Holmes during her life. On December 5, 1890, the executor having died, and the executrix resigned as trustee, W. C. Rodger was appointed trustee in their place by an order of the supreme court. He thereupon entered upon and continued the duties of said trusteeship until his death, on January 2, 1898. On his appointment he received the property of said trust estate in securities and money, amounting to $9,364.80, and from December 5, 1890, until his death he paid the income thereof—$40.15 per month—to the cestui que trust. William C. Rice, of Cazenovia, N. Y., has been duly appointed trustee to succeed said W. C. Rodger. Alfred D. Lewis and C. Julia Rodger have been appointed administrators of his estate. There came into their hands securities belonging to the said trust estate of the value of $4,736.74, and the balance of said trust estate, amounting, with interest, to $4,650.56, if in fact existing, was not invested, but was mingled with the individual funds of said W. C. Rodger. The referee found: "That there came into the hands of Alfred D. Lewis and C. Julia Rodger, as administrators of the estate of W. C. Rodger, deceased, with other property, the sum of $9,000 in money, which is on deposit in the bank of Rodger & Co., at Jordon, N. Y.; that the said money so deposited as aforesaid was increased and enhanced from said trust fund, and by reason of the trust so held by the said W. C. Rodger as trustee, to the extent of the said sum of $4,650.56, and, in addition thereto, there is $9,000 in money in the hands of the administrators in bank to the credit of the estate of W. C. Rodger." On the 22d day of January, 1896, on the petition of the said cestui que trust and others, an order was made at a special term of the supreme court appointing W. R. Rice, of Cazenovia, N. Y., trustee in place of said William C. Rodger, deceased, and appointing a referee to take and state the accounts between the said W. C. Rodger, deceased, by his administrators, and the estate so held in trust by him. No question is raised as to the procedure taken in this case. The administrators of the deceased trustee and the petitioners appeared before the referee. The facts were substantially agreed upon, and the sole question raised was whether or not the cestui que trust, or her trustee, William C. Rice, has an equitable lien upon the fund in the hands of the administrators of the said deceased trustee to the amount of $4,650.56, received by him on account of the trust estate, and not kept separate from his individual funds. The referee, as a conclusion of law, found "that the lien of the cestui que trust upon the $9,000 now in the hands of the administrators of William C. Rodger, deceased, is an equitable, prior, and superior lien to all liens of creditors, heirs, administrators, or next of kin." From the determination of the referee, and the order confirming his report, the administrators of the deceased trustee have appealed to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Homer Weston, for appellants.
A. E. Fitch, for respondents.

PUTNAM, J. In the opinion of Englar v. Offutt, 70 Md. 78–85, 16 Atl. 498, it is said:

"The principle upon which trust funds may be traced, when attempted to be misapplied, or where they have been converted into other property, or become mixed with other funds belonging to the trustee or fiduciary, is a very

plain one, and all the difficulty that is found to exist is in matters of fact and in identifying the fund. So long as a trust fund can be traced, the court will always attribute the ownership thereof to the cestui que trust, and will not allow the right to be defeated by the wrongful act of the trustee or fiduciary in mixing or confusing the trust fund with funds of his own, or even those of a third party. The true owner of a fund traced to the possession of another has a right to have it restored, not as a debt due and owing, but because it is his property wrongfully withheld from him. And it can make no manner of difference whether the fund be traced into a bank account, the possession of an individual, or into the hands of a firm composed of many individuals, if the essential facts are shown by which the identification of the fund can be established, and no superior rights of innocent third parties have intervened."

The doctrine thus stated is well settled. National Bank v. Insurance Co., 104 U. S. 54; Bank v. Peters, 123 N. Y. 272, 25 N. E. 319, and authorities cited in the opinion; Cook v. Tullis, 18 Wall. 332; People v. Bank of Dansville, 39 Hun, 187; In re Mumford, 5 N. Y. St. Rep. 303; 27 Am. & Eng. Enc. Law (1st Ed.) 250, and authorities cited; Holmes v. Gilman, 138 N. Y. 369–376, 34 N. E. 205; Baker v. Bank, 100 N. Y. 31, 2 N. E. 452; Van Alen v. Bank, 52 N. Y. 1.

In Re Greene's Estate, 20 N. Y. Supp. 94, Ransom, S., in an able opinion, reached the conclusion that:

"If money comes into the hands of a person as a trust fund, and is placed by him, together with other sums, to his own credit in a bank, and he dies insolvent, leaving a larger sum than the amount of the trust fund to his credit, the cestui que trust can follow the trust fund into the money left on deposit, and recover the amount thereof as against the personal representatives of the trustees."

The authorities fully sustain the doctrine thus stated by the learned surrogate, and the situation is the same whether a trustee deposits the trust funds together with his own in a bank, or in any other manner mingles the trust property with his own.

Applying the principle established by the authorities above cited to the case under consideration, we are of the opinion that the referee reached a correct conclusion. It is conceded that the deceased trustee in 1890 received the sum of $9,364.80 as a trust fund. On that sum he paid interest to the petitioner up to the time of his death. This was an admission on his part as against the administrators that the whole trust fund up to that time remained in his hands, although it appears that $4,650.56 thereof was not kept separate from his individual property. It has been held in some cases that a cestui que trust cannot reach the trust property where it has been so commingled with the individual property of the trustee that it cannot be distinguished or traced; that in such a case the cestui que trust stands in no better position than a creditor of a trustee; that to reach trust property in the hands of a trustee the cestui que trust must be able to show the property he seeks to reach to be his property. See Hart v. Bulkley, 2 Edw. Ch. 70. The true doctrine in that regard is stated in Cavin v. Gleason, 105 N. Y. 256–262, 11 N. E. 506:

"A court of equity, in pursuing the inquiry and in administering relief, is less hampered by technical difficulties than a court of law; and it may be sufficient, to entitle a party to equitable preference in the distribution of a fund in solvency, that it appears that the fund or property of the insolvent remaining for distribution includes the proceeds of the trust estate, although

it may be impossible to point out the precise thing in which the trust fund has been invested, or the precise time when the conversion took place."

And see Atkinson v. Printing Co., 114 N. Y. 168–175, 21 N. E. 178.

Within the case of Cavin v. Gleason, supra, the petitioners sufficiently established the fact that the money which came into the hands of the administrators included the proceeds of the trust estate. It was not questioned but that he received of the trust estate $9,364.80 in 1890, and continued to pay the interest thereon to the petitioner up to the time of his decease; thus showing that the property he left on his decease included the trust funds in question. As suggested in the case cited, it was not necessary to show the precise thing in which the trust fund has been invested, or the precise time when the conversion took place. As said in McLeod v. Evans, 66 Wis. 401, 409, 28 N. W. 173, 214:

"We do not understand that it is necessary to trace the trust fund into some specific property, in order to enforce the trust. If it can be traced into the estate of the defaulting agent or trustee, this is sufficient."

In Houghton v. Davenport, 74 Me. 590–596, it was said:

"The mere act of commingling different moneys does not necessarily prevent identification. It may make it difficult. The question is met in 2 Perry, Trusts (2d Ed.) § 837, thus: 'If some parcel with the trustee's own money, it may be said that the trust money has run into the general mass, and has become absorbed, and that the cestui que trust has no lien; but such cannot be the case. Although every identical piece of coin cannot be ascertained in a given mass, yet, there being so much trust money in the parcel, the cestui que trust is entitled to so much of it. If a trustee deposits trust moneys in bank to his own credit, the court will disentangle the accounts, and give the cestui que trust what belongs to them.' This doctrine has lately undergone a most exhaustive and masterly examination in England in the case of Knatchbull v. Hallett (In re Hallett's Estate) 13 Ch. Div. 696. And that case, in turn, and its doctrines, have been elaborately considered and emphatically indorsed in the later case of National Bank v. Insurance Co., 104 U. S. 54. In the English case it is determined that, if money held by a trustee has been paid into his private account at his banker's, the cestui que trust can follow it, and has a charge on the balance in the banker's hands. It was further held that the rule attributing the first drawings out to the first payments in, does not apply excepting as between the moneys of different cestuis que trustent, whose moneys are commingled by the common trustee; and that, as between the individual funds and trust funds, the drawer must be taken to have drawn his own money in preference to the trust money."

Again, as suggested above, in 1890 the deceased received the trust fund in question. At some period between that day and his death he mingled a part of it with his own property. Although thus mingled, it remained a trust fund. It is not to be presumed that he afterwards used such fund for his personal expenses, but that he preserved it for the purposes of the trust. In Knatchbull v. Hallett (In re Hallett's Estate) 13 Ch. Div. 696, it was said that where one holding trust money deposits it at a bank with his own, and afterwards draws out money by check in the ordinary way, it will be presumed that he drew out his own, and not the trust, money. So, in this case, the fund being shown in the hands of the trustee, and being by him mingled with his own fund, it should be assumed that whatever money or property was used by the trustee after such commingling was his own, was not the trust fund, and that such fund remained in his hands, forming a part of the sum now in the possession of his administrators.

Under the authorities referred to, the petitioners, having shown that the fund in question went into the hands of the deceased trustee, and that he continued to pay interest thereon until the time of his death, sufficiently established the fact that the whole fund was at that time in the possession of the trustee, although a portion of it was not kept separate from his individual property.

Our conclusion is that the order should be affirmed, with $10 costs and disbursements. All concur.