MARY V. GAULT ET AL.

*vs.*

HOSPITAL FOR CONSUMPTIVES OF MARYLAND,
A BODY CORPORATE.

In general,, the *cestui que trust* has the right in equity to
follow and recover, or impress the trust upon the trust fund or
property which has been wrongfully diverted, in whatsoever
form or hands it may come, so long as it may be distinctly
traced and identified, and until it comes into the hands of a *bona
fide* purchaser for value without notice, or until the rights of
innocent third parties have intervened.                    p. 594

When trust money becomes so blended with the trustee's indi-
vidual funds that it is impossible to trace and identify it as en-
tering into some specific property, the trust ceases.     p. 594

When trust property can not be traced, the equitable right of
the *cestui que trust* to follow it fails.                p. 596

*Decided November 12th, 1913.*

Appeal from Circuit Court No. 2 of Baltimore City
(STUMP, J.).

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Edward M. Hammond* and *Edward L. Ward,* for the appellant.

*Andrew C. Trippe* (with whom was *James McC. Trippe* on the brief), for the appellee.

Stockbridge, J., delivered the opinion of the Court.

By the residuary clause of the will of Joseph Ruddach made in 1831, he divided the balance of his estate, not previously disposed of, into four parts, one of which he gave to his son Washington, one to his son Joseph Henry, one to his son Edmond,

> "And the remaining one equal and undivided fourth
> part thereof unto my wife, Rebecca Ruddach, her
> heirs, executors, administrators and assigns forever, in
> trust nevertheless, to pay the net Rents, Interest and
> Income thereof unto my daughter, Mary Elizabeth
> Ruddach, for her sole and separate use * * * and
> from and immediately after the decease of my said
> daughter, then in trust to and for the only proper
> use and behalf of such person or persons as would be
> entitled to the same if the said Mary Elizabeth had
> survived her husband and died intestate, seized and
> possessed of the said premises in fee simple, by devise,
> and in such manner and for such quantity of Estate
> as such person or persons would in such case be enti-
> tled to by law."

The present case involves only the fourth of his estate bequeathed, in trust as above quoted.

It appears from the administration accounts passed in Joseph Ruddach's estate, and from an auditor's account in the Circuit Court distributing the proceeds of sale of cer-

tain real estate, that the aggregate amount of property passing to Rebecca Ruddach, as trustee, was $5,014.34.

Mary Elizabeth Ruddach, the *cestui que trust* for life named in the will, married William F. Burns, who was for a long time President of the Eutaw Savings Bank, and having survived her husband died December 8th, 1910, leaving a will in which the appellee was named as residuary legatee. The estate of Mary E. Burns having been distributed by her executor to the legatees named in her will, the bill in this case was filed by certain of those who would have been entitled in remainder under the will of Joseph Ruddach, against the residuary legatee to recover the amount of the corpus of the trust estate created as already shown. The proceeding is upon the theory that at some time the trust fund in the hands of Rebecca Ruddach, as trustee, was by her turned over to Mrs. Burns, who thereafter continued the discharge of the duties of the trust, but who did not in her lifetime, or by her will, make any provision for turning over the corpus of the trust estate to the remaindermen.

There is evidence in the record that for a number of years prior to her decease, Mrs. Burns had contributed generously to the support of the plaintiffs, a nephew and certain nieces, the amount reaching at least $2,800.00 per annum, and these allowances were contributed and in some instances increased by her committee after she became of unsound mind. When these gifts were first made by Mrs. Burns is not entirely clear, some certainly as much as thirty years before her death.

By the death of her husband Mrs. Burns became a wealthy woman, possessed of about $400,000 in her own right and with a life interest in some $300,000 more from the estate of her husband and a similar interest in $150,000 from the estate of an only daughter.

While a number of questions were argued in connection with the case, it will be sufficient to consider the one vital question, the tracing of the trust fund. The present suit is not against the trustee under Mr. Ruddach's will, but against

the residuary legatee of one to whom that trustee is claimed
to have turned over the trust estate.   In such cases the con-
trolling principle is clear.   "It is a well settled rule that a
*cestui que trust* has the right in equity to follow and recover,
or impress the trust upon the trust fund or property which
has been wrongfully diverted, into whatsoever form or hands
it may come so long as it may be distinctly traced and identi-
fied, until it comes into the hands of a *bona fide* purchaser
for value without notice or the rights of innocent third par-
ties have intervened or until the means of ascertaining the
property fails but the right to follow trust funds or property
ceases when the means of ascertaining and identifying the
same fails."   39 *Cyc.* 528, 531; *Englar* v. *Offutt,* 70 Md.
78; *Drovers' Bank* v. *Roller,* 85 Md. 495; *Holmes* v. *Gilman,*
138 N. Y. 369; 20 L. R. A. 566; *Wetherell* v. *O'Brien,* 140
Ill. 146; *Bank* v. *Goetz,* 138 Ill. 127; 32 Am. St. Rep. 119,
and elaborate note beginning on page 125.

In the present case can the $5,014.34 constituting the
corpus of the trust estate in the hands of Mrs. Ruddach be
distinctly traced to the hands of Mrs. Burns? The evidence
to show this is first the testimony of Mrs. Finley Burns, a
sister-in-law of Mrs. Mary E. Burns.   This lady was, at the
time she testified, approximately seventy years of age, had
lived with Mrs. Mary E. Burns and knew Mrs. Ruddach
well.   She says: "I only know what they both told me that
Mrs. Ruddach had given Mrs. Burns' part to her, and Mrs.
Burns was to use it for a certain purpose," that what was so
given was the "income."   This witness further testified that
she heard this talked over often, "a thousand" times, and
that the first time was "surely thirty years ago."   A little
later the same witness testified in substance that Mrs. Mary
E. Burns had told her she was holding about $5,000.00 and
that it had been given her because she had undertaken the
care and support of the plaintiffs.   On cross-examination the
same witness testified that she did not know who had the
money and that the attendant circumstances of these con-

versations did not make any great impression on her.   Another witness, Mrs. Mary F. Lewis, testified that Mrs. Mary E. Burns had told her that she, Mrs. Bruce, had the money, that the amount was about $5,000.00, and that the witness had heard it a great many times, and certainly before 1880. The testimony of these two witnesses is the sole evidence upon which to predicate a transfer of the corpus of the trust fund from the trustee, Mrs. Ruddach, to Mrs. Burns.   The defendant produced Mr. Hayden, now the president of the Eutaw Savings Bank who testified that an account was opened in that bank in the name of Mary E. Burns in 1850, that at no time during the running of that account was there any deposit of $5,000.00 or a sum approximating that amount, that from 1860 to 1869 there were no deposits, and the deposit on the last date was of $100.00 and that Mrs. Burns during his acquaintance with her never spoke or indicated that she held any moneys coming from Mrs. Ruddach as trustee.

It further appears in evidence that at the time the application was made to the Circuit Court No. 2 after the adjudication of lunacy of Mrs. Burns for the payment to these plaintiffs of moneys for their support, the estate of Mrs. Burns was alleged to have been derived from the estate of her husband William F. Burns, and nothing was said of any trust fund in which these plaintiffs were interested as remaindermen.   The record is barren of any evidence to show in what form Mrs. Ruddach held the trust fund, whether stocks, bonds, mortgages or in cash, and there is no identification whatever of any such property to pass to Mrs. Burns unless in cash.   But if it had been held by Mrs. Ruddach as cash, there is no evidence whatever that it passed to Mrs. Burns, beyond a general recollection of two ladies as to conversations which took place many years ago.   This falls far short of what has been held a distinct tracing and identification of the fund, or even showing a commingling of trust moneys with the individual moneys of the trustee.   In such cases the great weight of authority both in England and this country

is in favor of the rule as given in *Little* v. *Chadwick*, 151 Mass. 109; 7 L. R. A. 570, that "when trust money becomes so mixed up with the trustee's individual funds that it is impossible to trace and identify it as entering into some specific property, the trust ceases. The Court will go as far as it can in thus tracing and following trust money; but when as a matter of fact, it cannot be traced, the equitable right of the *cestui que trust* to follow it fails." This doctrine was reaffirmed in *Lowe* v. *Jones*, 192 Mass. 94; 116 Am. State Rep. 225, in which all the antecedent authorities were carefully reviewed.

It seems to have been the idea of the plaintiffs that the payments made by Mrs. Burns to them were to be regarded in the light of income, and thus bring the case within the rule laid down in *In re Holmes*, 55 N. Y. Supp. 708, that the payment of interest by a trustee shows the fund in his possession, although it or some portion of it was mingled with his individual property. And to support this view Mrs. Finley Burns is careful in testifying, to say that the payments made by Mrs. Mary E. Burns were of income, never of principal. The difficulty with this theory lies in the fact that an income of $2,800.00 or over per annum cannot be produced by an estate of only $5,000.00, and Mrs. Finley Burns only ventures to claim $300.00 per annum as the income, but no attempt is made to distinguish as between income paid to the *cestui que trustent in remainder,* and gifts to them by Mrs. Mary E. Burns. The decree appealed from will accordingly be affirmed.

*Decree affirmed, with costs.*