**MASTERSON v. ALLEN et al.**

**No. 9899.**

Court of Civil Appeals of Texas. Galveston.

Jan. 25, 1934.

Rehearing Denied Feb. 15, 1934.

540

Elliott Cage and Walter F. Brown, both of Houston, for plaintiff in error.

Fulbright, Crooker & Freeman, of Houston (John H. Crooker, Jno. H. Freeman,· and Chas. A. Leddy, all of Houston, of counsel), for defendants in error.

GRAVES, Justice.

The parties will be designated appellant and appellees rather than by the longer appellations appearing in the record.

This briefly stated but merely general statement of the outstanding features appertaining to the nature and result of the suit is taken, in substance, from the appellant's brief, since it is thought to correctly reflect the proceedings in so far as it goes:

"N. T. Masterson brought this suit in the district court of Harris County to recover from S. M. Allen an amount alleged to be due on a partnership accounting and settlement, including (1) one-half of four demand-notes aggregating $368,455.15 executed on August 20th of 1924 in Masterson's favor by Allen individually and by the cattle-firm the two composed, and (2) a balance of $11,873.07 on subsequently-incurred open accounts of the firm, which Masterson claimed to have paid.

"A. T. Eddingston intervened, claiming a garnishment-lien on whatever Allen was found to owe Masterson.

"Allen denied that he was indebted to Masterson and invoked the statute of limitation as a defense. He also filed a cross-action against Masterson, alleging that—on the dissolution of the partnership—the assets had been turned over to Masterson for liquidation of the partnership affairs, and Masterson had negligently handled these assets, causing a loss for which he was responsible to Allen. Damages of $150,000.00 with six per cent interest from January 1, 1923, were sought by Allen on his cross-action.

"The cause was submitted to a jury on special issues. The jury's verdict was returned on November 27, 1931, and the defendant filed a motion for judgment in his favor on this verdict. Plaintiff moved for judgment non obstante veredicto, and requested the court to disregard certain findings of the jury because they had no support in the evidence. Plaintiff's motion was heard and overruled by the court, to which plaintiff excepted, and defendant's motion was granted, the court rendering judgment on December 7, 1931, that Masterson take nothing against Allen; that Eddingston take nothing by his intervention, and that Allen take nothing on his cross-action."

The record is voluminous well-nigh to the nth degree, containing, among other features, contributing to that resulting condition, 109 assignments of error; but, although this court has painstakingly examined the whole, it is its conclusion that the appeal is properly reducible to, and determinable upon, the few high points that will be herein discussed and disposed of.

The litigants had long before the transactions here involved been engaged as partners in the cattle business under the firm name of Allen & Masterson, Allen being the practical stockman in that occupation, Masterson not being such, but being a resident, of the city of Houston and having considerable personal resources, together with valuable financial connections; these partnership relations became the subject-matter of a written contract between them of February 28, 1916, of which the provisions deemed most pertinent here were these:

"That all money heretofore borrowed or to be borrowed is to be paid with interest first, and, second, all expenses are to be paid before either partner is to receive any profits arising from the sale of cattle or leasing land, etc. * * *

"Neither party is to receive any salary or compensation for his or their work until after the debts and expenses are paid, and if at that time there are any profits, that same shall be divided equally, share and share alike."

Pursuant to this agreement, the large busi-

ness developed continued up to June 30th of 1922, when, at appellant's instance, this written contract of dissolution was entered into:

"First: Whereas, heretofore the above parties have been partners in the buying, selling and raising of cattle and they have mutually agreed that said partnership shall cease and become effective on July 1, 1922.

"Second: Said S. M. Allen and Neill T. Masterson having had a partnership prior to 1916 and at that time entered into a written contract and in said written contract under paragraph Three, it is provided that if there is any gain or loss that each of the above named partners are to share the gain or profits in equal proportions share and share alike; and; .

"Whereas, at the present time said firm of Allen and Masterson owe approximately Five Hundred Thousand Dollars ($500,000.00), and as far as partnership heretofore existing is concerned, after the indebtedness of Allen &, Masterson has been paid, then and in that event if there are any profits arising whatsoever, or loss, they are to be divided as originally contemplated, share and share alike.

"Now, therefore, for and in consideration of the sum of One Dollar ($1.00) cash in hand paid, I, S. M. Allen, do hereby transfer, set over, sell and assign to Neill T. Masterson all of my interests, rights, and equities, being my undivided one-half interest in all of the leases and live stock, and everything that is set out in that certain mortgage executed to the Finance Cattle Loan Corporation. Also to cattle that have been bought since then, that are now mortgaged to the First National Bank, Houston, Texas.

"There is to be·an accounting of all cattle sold, to the said S. M. Allen, at the time that they are sold; there are to be books kept to show how the accounts of Allen & Masterson stand, including their indebtedness and expenses in the handling of these cattle, and said books are to be accessible to the said S. M. Allen at any time that he may desire to see them.

"That S. M. Allen relinquishes any rights· whatsoever, or claims in the management of the said ranches or the properties thereon, and it is the intention of this instrument to transfer any and all improvements heretofore made by the said Allen and Masterson.

"Witness our hands this the 30th day of June, 1922.

"[Signed]   S. M. Allen
"[Signed]   Neill T. Masterson."

The capital contributions of each partner to the firm business as further reflected by the first quoted from contract, which, along with that just copied in full, was made a part of the appellant's trial petition, were in essence that Allen, on the one side, would put in his work and experience—including his entire time in handling the cattle—together with certain horses and equipment he owned and the use for pasturage purposes of his one-half of, the 11,000-acre San Bernard ranch, while Masterson, on the other, was to procure or furnish the necessary money for the conduct of the joint enterprise, inclusive of that to be used in buying the cattle, paying for other grazing lands leased, incidental expenses, et cetera. Among the provisions of the instrument tending toward the portent given, other than the two above quoted, are these:

"1. That Whereas, heretofore, the above parties have bought cattle and have executed their notes for the payment of the cattle, and contemplate buying cattle in large numbers in the future, Sam M. Allen having the necessary equipment and horses to work the cattle, and Neill T. Masterson agreeing to procure and furnish all the money needed in the business for the purpose of buying cattle, leasing lands for grazing purposes, and for oil purposes in connection with the oil land of Bernard Ranch, and the expenses incident thereto. * * *

"2. That while it is understood that Sam M. Allen is to take care of the cattle and Neill T. Masterson is to procure the money, however, if for any reason it is found impossible for said Neill T. Masterson to raise such amounts of money, he is not to forfeit any part or interest in the profits or losses that may arise.

"That it shall be the duty of Sam M. Allen to help the said Neill T. Masterson in any way that it is possible to procure any and all money that may be necessary in the conduct of their business, and in the event that Sam M. Allen is sick or disabled, it shall be the duty of said Neill T. Masterson to help in every way possible that is known to him, to work and take care of said cattle. * * *

"3. Sam M. Allen agrees that the firm of Allen & Masterson shall have the use of his undivided one-half interest in the Bernard Ranch during the life of the lease this day entered into by and between Mrs. S. E. Allen, Sam M. Allen and N. T. Masterson, composing the firm of Allen & Masterson, and

"4. That whereas, should Sam M. Allen die during this partnership, then Neill T. Masterson shall have one year's time within

which to sell off the cattle, pay the debts and divide the profits, if any, with his heirs and assigns, and the said Neill T. Masterson is to have the use of the horses and necessary equipment for working and taking care of said cattle free of any cost or charge, and,

"5. Whereas, should Neill T. Masterson die during the life of this partnership, then Sam M. Allen shall have one year's time within which to sell the cattle, pay such debts as may exist, and divide the profits, if any, with his heirs or assigns."

Just as these contractual provisions—both of original engagement and subsequent dissolution—determined at all times the reaches of their relations toward each other with respect to the firm's business, so now they likewise lie at the base of this dispute over the final settlement of its affairs; in short, they plainly disclose: (1) That the partnership property was exclusively made up of the use alone of moneys borrowed for or personally advanced to the firm by appellant on the one side (he always retaining the property thereof in himself), and of equipment, experience, pasturage, and services furnished by the appellee upon the other; (2) that appellant, by express stipulation, was to be reimbursed for all money or capital borrowed for or advanced to the partnership by him before any profits could be declared; (3) that neither partner was to share in the capital losses, if any, of the other—that is, by clear implication from what was thus written between them, Masterson alone was to be out his money, while in like manner Allen was to lose his labor and equipment; (4) the dissolution agreement, whereby appellant was to take over the entire partnership assets under specific stipulation that he would liquidate them and apply the proceeds toward settlement of the firm's indebtedness, together with an accounting therefor to the appellee, created a trusteeship with defined duties in the latter's favor, which, if violated, gave him a right of redress as for conversion.

These legal consequences from the way they thus bound themselves are, since the writings were both made parts thereof, all apparent from the face of the appellant's pleadings, the last one only so in potentiality, however, depending on whether the trust was in fact shown from evidence to have been breached; when the statement of facts and the jury's findings are looked to, not only is the necessary proof on that one found to have been properly presented, but the existence of the others is thereby fully confirmed also.

■ It follows, therefore, irrespective of the multiplicity of considerations interposed against it, that the learned trial court's judgment was the only one that could properly have been entered in the circumstances. Since the notes sued upon allegedly grew out of the partnership transactions, as to which no accounting between its members had been had when they were executed, no recovery upon them as such was permissible. Hardee v. Adams Oil Ass'n (Tex. Civ. App.) 254 S. W. 602; Lockhart v. Lytle, 47 Tex. 452; Merriwether v. Hardeman, 51 Tex. 436; Worley v. Smith, 26 Tex. Civ. App. 270, 63 S. W. 903; Danforth, Roos & Eppstein v. Levin (Tex. Civ. App.) 156 S. W. 569; Snyder v. Slaughter (Tex. Civ. App.) 208 S. W. 974; Parsons on Partnership, 286; Collier on Partnership, § 284; First Story's Eq. § 664.

■ Neither could any contribution to the debts the notes were claimed to evidence be required of the appellee under any other form, because, as presaged supra, they were all (if in fact any by the partnership) indisputably, if not undisputedly, shown from both the pleadings and the proof to have been losses only of the moneys as capital that were wholly—under the specific conditions already shown—furnished by the appellant alone, wherefore his sole partner, having never owned any individual interest therein, could not be held for the replacement thereof, he only, by well-settled authority, having to bear the total loss. The recognized rule on this subject is thus stated in Rutherford's "Institutes of Natural Law" (2 Am. Ed.) p. 140: "In partnership, where work is contributed on one side and money on the other, the partner from whom the money comes may contribute only the use of the money or the property of it. If he contributes the use of it, and still keeps his property in the principal, so that the joint stock is to be considered as made up of the labor of one partner and the use of the other's money, it is plain that, supposing the principal to be safe, it belongs to him, and that, supposing it to be lost, he alone bears the loss. The other partner who contributes work, since as the case is put, he had no claim to the principal money or any part of it, cannot be obliged to make good any part of the loss, or to bear any share of it, but if he contributes the property of his money, so that the joint stock upon which each of them has a common claim, is made up of his principal money and of the other's labor, then the partner who labors has a claim upon the principal money itself; and consequently,

whenever the partnership is dissolved, if the principal or any part of it is safe, he ought to share in it; and, if the principal is lost, he is a sufferer by losing such share."

To the same effect are Ruling Case. Law, vol. 20, p. 930; Meadows v. Mocquot, 110 Ky. 220, 61 S. W. 28; Heran v. Hall, 1 B. Mon. (Ky.) 159, 35 Am. Dec. 178; Baker v. Safe Deposit & Trust Co., 90 Md. 744, 45 A. 1028, 78 Am. St. Rep. 463; Manley v. Taylor, 50 N. Y. Super. Ct. 26; Hasbrouck v. Childs, 16 N. Y. Super. Ct. 105; In re Liquidation of Mitchell-Borne Const. Co., 145 La. 379, 82 So. 377; Cameron v. Watson, 10 Rich. Eq. (31 S. C. Eq.) 64; Notes L. R. A. 1917E, 879; Ann. Cas. 1916D, 825; Johnston v. Steele, 48 Tex. Civ. App. 335, 107 S. W. 631; Bivins v. Proctor & Goodman (Tex. Civ. App.) 49 S.W.(2d) 824; Simpson v. Fulcher (Tex. Civ. App.) 45 S.W.(2d) 1012.

■ The evidence discloses that the contracts were prepared by appellant; hence they must be construed most strongly against him. Texas Jurisprudence, vol. 10, § 162; Demilley v. Texas & N. O. Ry. Co., 91 Tex. 215, 42 S. W. 540; Faulk v. Dashiell, 62 Tex. 642, 50 Am. Rep. 542; Powers v. Sunylan Co. (Tex. Com. App.) 25 S.W.(2d) 808.

■ When the second of these was executed on June 30, 1922, by its express terms appellant accepted a position of a trustee, whose rights and obligations were not only limited thereto (Diversified Fruit Farms v. Johnson (Tex. Com. App.) 58 S.W.(2d) 73, 76), but whose duty to promptly dispose of the partnership assets and apply them to the payment of its existing debts was expressly and clearly defined; the proof conclusively shows, consisting in considerable measure of his own testimony, that, instead of so doing, he continued thereafter to buy, sell, feed, and care for cattle over a period of several years, without keeping any separate accounts on these transactions, thereby so mingling the new business he did with the old that had been conducted for the partnership that it had become impossible for any ascertainment to be made of what losses or gains should be charged to the former partnership and what to the new deal.

It is true that, as the sole authorization of this procedure, he set up in his pleadings that, subsequent to the delivery of the dissolution contract, he and the appellee orally agreed to the effect that their partnership would be continued during the liquidation of its old assets whereby additional cattle would be bought and sold, with the profit re-

sulting therefrom to be equally divided between the parties according to the terms of their original articles of copartnership; but this issue of fact as to whether such oral agreement was so made was submitted to the jury and on sufficient evidence answered in the negative, which relegated matters back to where they formerly stood.

Being thus without right to continue the partnership business at all after agreeing in the manner shown to dissolve and liquidate it—in return for a conveyance to himself for that purpose of his partner's entire interest— and having so breached the obligations to the latter he thereby assumed, especially in finally exhausting and appropriating to his own use the firm's total assets intrusted to him, as well as in rendering impracticable any balancing of its accounts in liquidation as between them, he not only failed herein to show himself entitled to recover anything from the appellee, but laid himself liable as for wrongful appropriation of the latter's property; ordinarily, it is true, one partner cannot sue the other for conversion of the firm property where there has been no settlement of its affairs, since each is deemed entitled to the possession of the whole, 21 A. L. R. page 121, and notes; but the rule is otherwise in instances like this, where a contract of liquidation has been entered into, being thus stated in the same volume in the notes on page 123: "One partner, after dissolution and settlement of the partnership affairs by an agreement wherein the defendant contracted to collect the assets of the firm and apply them to the outstanding debts, could maintain an action for the conversion by the latter of the moneys collected by him." Snyder v. Baber, 74 Ind. 47; Bartley v. Williams, 66 Pa. 329; Eddelin v. Hagan's Administrator (Ky.) 7 S. W. 251; Rathwell v. Rathwell, 26 U. C. Q. B. 179.

On this feature of the cause the jury found, on evidence this court cannot say was insufficient, that not only were the assets thus taken over by appellant under the liquidation contract at that time sufficient to pay all then existing partnership obligations—inclusive of all capital advances made by him—but that this same condition still existed as late as December 13th of 1922, together with the added finding that the agreed upon liquidation of the firm's affairs could have been effected within that intervening time by the exercise of reasonable diligence upon his part.

■ When trust property becomes so mixed with that belonging to the trustee in-

544

dividually that it is impossible to trace or identify it as entering into any other specific property, the trust disappears and is supplanted by a conversion. Gault v. Hospital for Consumptives of Maryland, 121 Md. 591, 89 A. 105; Phillips v. Overfield, 100 Mo. 466, 13 S. W. 705; In re Steinway's Estate, 37 Misc. 704, 76 N. Y. S. 452. In such an instance the ·cestui que trust may recover the property, or its equivalent, Hanover Nat. Bank v. Thomas, 217 Ala. 494, 117 So. 42; not only so, but the burden of distinguishing trust funds when the trustee has mingled them with his own is upon the trustee, Baker v. Bankers Mortgage Co., 15 Del. Ch. 209, 135 A. 486; Atkins v. Atkins, 279 Mass. 1, 180 N. E. 613; Gibson Company v. Elze, 88 Colo. 181, 293 P. 958.

Obviously, if these conclusions be sound, as they are thought to be, it would be a work of supererogation to go into the many other presentments made—whether of limitation, sufficiency of evidence to sustain certain findings of the jury, procedure upon the motion for new trial, or what not; that will therefore not be done.

Having found no reversible error, an affirmance has been entered.

Affirmed.